MOTION PICTURE PATENTS CO. v. CHAMPION FILM CO.

(Circuit Court, S. D. New York. December 29, 1910.)

PATENTS (§ 328*)—INFRINGEMENT—KINETOSCOPE.

The Edison reissue patent, No. 12,037 (original No. 589,168), for a kinetoscope, *held* infringed, on motion for a preliminary injunction.

In Equity. Suit by the Motion Picture Patents Company against the Champion Film Company. On motion for preliminary injunction. Motion granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Warren H. Small and J. Edgar Bull, for complainant.
Briesen & Knauth, for defendant.

LACOMBE, Circuit Judge. This is an application for preliminary injunction under reissue patent No. 12,037, to Thomas A. Edison, for a kinetoscope, which was sustained and its claims construed by the Circuit Court of Appeals in this circuit in Edison v. Am. Mutoscope & B. Co., 151 Fed. 767, 81 C. C. A. 391. An earlier decision of that court discussed the original patent. 114 Fed. 926, 52 C. C. A. 546. Nothing that was said in either of these opinions need be repeated here. It is assumed that they will be consulted. They described the device of the patent and analyzed the claims so fully, illustrating the decision by describing the cameras which were held, the one to infringe, the other not to, that it seems not difficult to apply the principles of the decision to the Gaumont and Champion-Gaumont cameras now before the court. The differences between these two alleged infringing cameras are unimportant. Defendant apparently does not contend otherwise. Therefore this discussion will be confined to the Champion-Gaumont type, of which an operative camera has been submitted for inspection.

The film-moving mechanism of both, however, is so well shown in the drawing and blue print filed with the papers that their operation may be easily understood. The film passes from the delivery roll to a delivery wheel, whose sprockets engage positively with holes in the sides of the film. This wheel revolves, not intermittently, but continuously, and in operation there is always a loop or slack part of the film between it and the film guide. In consequence the delivery wheel does not itself advance the film through the guide. In the Mutoscope Case it was held that these circumstances did not negative infringement. The film passes through the guide, around a cam eccentrically mounted on a continuously moving wheel, to the take-up reel, where it engages with sprockets; the latter reel revolving continuously. The operation is as follows: The device being at rest, there is the loop or slack above the guide entirely free to be drawn down through the guide, the same as in the Biograph and in the Warwick cameras, which were considered in the Mutoscope Case. In the Biograph instrument this slack was pulled through by two friction rollers revolving continuously; the movement of the film being intermittently checked by a so-called tension leaf. "The engagement with the film was wholly frictional; * * * no such interlocking as will hold the film firmly, advancing it with mathematical accuracy. * * * There was the possibility of slip." In the Warwick the film was pulled through by a bifurcated fork, which engaged with holes and advanced the film mathematically a certain distance and then disengaged. The Court of Appeals held that the bifurcated fork was a fair equivalent of the wheel with sprockets.

In the Champion-Gaumont, when at rest, the film is stretched taut between the guide and the take-up sprocket wheel resting snugly against the cam. We may assume that at that time the outer edge of the cam is on the side of the wheel furthest away from the film. Its position is not essential. Substantially the same cycle of movement may be worked out if it be in the reverse position. The machine being

started, what happens in a given space of time? The moving sprocket wheel revolves through a predetermined arc, and, carrying the film on its sprockets, advances the film a predetermined distance. During the same time the outer edge of the eccentric cam is brought into engagement with the taut film, and, revolving, pushes it out a distance predetermined by the amount of the cam's eccentricity. The film thus pushed out cannot come from the side of the take-up wheel, where it is held firmly on sprockets. It can readily come, and does come, out of the film-guide; the slack above the guide allowing it to move easily forward. As the revolving eccentric cam recedes to the inner side of its wheel axis, it leaves the film which it has pushed out, and for a brief interval there is no movement of the film out of the guide, because the cam is no longer pushing on it, and the sprocket wheel cannot pull on it till it has first taken up slack. During that period the film is at rest for receiving impressions from the lens.

Defendant contends that this operation of advancing the film is wholly frictional, that there is every possibility to slip, and that the spacing cannot be mathematically accurate. This contention is not found persuasive. There is friction between the cam and the film; but it is very different from the action of two rollers, whose frictional contact alone gives a grip and produces a pull. One end of the film (the part on the sprocket wheel) is firmly held. It cannot slip back, and in reality it is this which causes it to advance when the cam pushes it. It must advance or break. I find it impossible, from a study of the drawings or from a manipulation of the exhibit, to see any possibility of slip. Why the spacing should not be mathematically accurate is not apparent. The arc through which the sprocket wheel will move in a given time is predetermined. The equivalent in linear movement of the film is known. The additional length of film which will be hauled out of the guide to accommodate the eccentric cam is also predetermined by the measure of the cam's eccentricity. The total distance the film will advance past the lens, being the sum of these two predetermined items, is itself predetermined. The period of rest may also be predetermined, it would seem, with mathematical accuracy. It is the time necessary for a sprocket wheel, of a given diameter revolving at a given speed, to reel up the amount of film required to accommodate a protruding cam, the extent of whose eccentricity is accurately known.

The conclusion is reached that the Champion-Gaumont and the Gaumont machines infringe. It is conceded that the Pathe machine, one of which is owned by defendant, also infringes. This and its Champion-Gaumont may, as suggested, be impounded in the custody of defendant's counsel until final hearing.

Preliminary injunction may issue.